UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

 SILENT GLISS INC.,

                      Plaintiff,          **MEMORANDUM & ORDER**
                                          22-cv-522(EK)(MMH)

           -against-

 SILENT GLISS INTERNATIONAL LTD.,
 SILENT GLISS HOLDING LTD., SILENT
 GLISS LIMITED, et al.,[1]

                      Defendants.

------------------------------------x
ERIC KOMITEE, United States District Judge:

          This case arises out of a contract dispute between

Silent Gliss International Ltd., a Swiss manufacturer of window

treatments, and its (previously) authorized United States

distributor, Silent Gliss Inc.  Broadly speaking, the U.S.

distributor says that after its relationship with the

manufacturer broke down, the manufacturer interfered with the

U.S. entity's efforts to sell its remaining inventory, in

violation of the parties' contractual arrangements.  The U.S.

distributor filed suit in this Court and now moves for

_____

          [1] Defendants notified the Court that the entity Plaintiff refers to as
"Silent Gliss Holding Company" is actually called "Silent Gliss Holding Ltd."
*See* ECF No. 15, at 9 n.3.  Plaintiff does not dispute this.  Accordingly, the
Clerk of Court is directed to amend the caption of this action by replacing
"Silent Gliss Holding Company" with "Silent Gliss Holding Ltd."

injunctive relief.  *See* ECF No. 14.  For the reasons set out below, Plaintiff's motion is denied.

## I.    Background

### A.    Factual Background

Silent Gliss International (the lead defendant, which I will call "SG International") is based in Bern, Switzerland. It manufactures window shades, blinds, and the like.[2]  Compl. ¶ 17, ECF No. 1-1.  In 2014, SG International entered a "License and Distribution Agreement" ("LDA") with plaintiff Silent Gliss Inc. ("SG USA") pursuant to which SG USA received the exclusive right to market and distribute SG International's products in the United States.  License & Distribution Agreement ("LDA") § 1.1, Ex. to Aff. of Ezra Bibi ("Bibi Aff."), ECF No. 14-6.  SG International does not own SG USA in whole or in part, and they are not part of a common corporate structure.  *See* Rule 7.1

---

[2] Plaintiff has sued a number of additional corporate entities and six individuals.  These are Silent Gliss Holding Ltd., Silent Gliss Limited; Silent Gliss Corp., Silent Gliss Global, Ltd., Bernard Bratschi, Michael Heath, Michel Frauchiger, Konrad Bratschi, Peter Broennimann, and Guy Butler. It is undisputed that Michael Heath and SG Corp. have been served, and both have appeared in the case.  *See* Notice of Removal 7, ECF No. 1.  Several of the defendants have not yet been served, however, *see id.*; SG International has appeared for the purpose of moving to dismiss the case for lack of service.  *See* Ltr. Requesting Premotion Conference, ECF No. 11. Decision on that motion will be reserved for the time being.

Statement, ECF No. 5.  Instead, the relationship between the two
is purely contractual.  *See* LDA at 1-2.

Approximately two years later, SG USA entered into
another agreement with one of SG International's affiliates — a
Delaware company called Silent Gliss Corp. ("SG Corp.").  Compl.
¶ 98.  This agreement, which the parties call the "SG Corp.
Agreement," set out certain ways in which SG Corp. would
"provide assistance to" and "support" Plaintiff in the United
States.  *Id.* ¶ 6.  SG Corp. had one employee, Michael Heath, who
was tasked to "work with" SG USA to "assist with the development
of SG USA."  *Id.* ¶ 98.  Despite SG Corp.'s contractual
obligation to assist SG USA, Heath was not employed by SG USA,
and he had other obligations, *see* Decl. of Michael Heath ("Heath
Decl.") ¶ 4, ECF No. 17; the SG Corp. Agreement capped his
efforts to assist SG USA at fifty percent of his time.  SG Corp.
Agreement § 1.1, ECF No. 14-7.

The LDA gave SG International the right to terminate
its arrangement with SG USA on six months' notice if SG USA
failed to meet certain profitability thresholds.  LDA § 14.2(b).
As it happened, SG USA did fail to meet those thresholds, and SG
International terminated the agreement in February 2020.  *See*
Notice of Termination of LDA, ECF No. 14-10 (invoking LDA
§ 14.2(b) ("Early Termination of Agreement")).  SG USA does not
contest SG International's right to terminate the agreement, but

says that after SG International did so, it (and its affiliates)
breached certain contractual provisions — in both the LDA and
the SG Corp. Agreement — that survived termination.

SG USA's complaint and motion for injunctive relief
describe the basis for relief in fairly broad generalities.
Plaintiff contends that post-termination, SG International was
required to purchase SG USA's remaining inventory (or cause a
third party to make the purchase), *see generally* LDA § 15.3, but
that SG International did neither.  Pl.'s Mem. in Support of
Prelim. Inj. ("Pl. Br.") ¶ 25.  SG International declined to do
so based on its determination that SG USA had failed to satisfy
a condition precedent to SG International's purchase obligation
— namely, the obligation to "provide a written list of
inventory" – because SG USA did not provide adequate and
accurate information about its inventory.  Def.'s Mem. in Opp.
to Prelim. Inj. ("Def. Opp.") 13, ECF No. 15.

Regardless of its reasoning, SG International's
decision not to purchase SG USA's remaining inventory upon
termination implicated Section 15.4 of the LDA, which provides
that if SG International does not purchase the inventory or
cause the purchase thereof, SG USA will "have the right to sell
off its remaining property in the ordinary course of business"
during what the LDA terms the "Sell-Off Period."  This right to
sell SG USA's inventory forms the basis of the motion for

4

injunctive relief.  SG USA contends that SG International interfered with SG USA's efforts to sell its inventory during the Sell-Off Period.  Pl. Br. ¶¶ 25, 46.  This interference consisted, according to SG USA, of "Mr. Heath continu[ing] to solicit former clients," Compl. ¶ 101; disparaging SG USA and "convey[ing] lies to discredit [SG USA's] role within the SG organization," *id.* ¶ 103; and advising clients that SG USA "no longer [was] permitted to sell . . . Silent Gliss products." *Id.*  In addition, SG USA alleges, the defendants "fail[ed] to take the necessary steps to protect SG USA's exclusive Territory as required" under the LDA.  *Id.* ¶ 104.

**B.   Plaintiff's Claims and Request for Injunctive Relief**

SG USA contends that SG International has committed a series of legal violations that entitle it to injunctive relief. These include, *first*, breach of contract.  Among other provisions, SG USA says defendants violated Section 1.1 of the LDA, in which SG International granted SG USA an "exclusive license" to sell Silent Gliss products in the defined territory. SG USA also invokes the "confidentiality and restrictive covenants" in the SG Corp. Agreement, *see* Pl. Br. ¶ 12; this appears to be a reference to Mr. Heath's alleged continued use of SG USA's client lists.  *See id.* ¶¶ 16-18.

SG USA also refers to "non-competition and non-solicitation covenants," *id.* ¶ 21, but does not say where these

5

covenants appear.  The LDA prohibits *SG USA* from competing against SG International and its affiliates in the wholesale window-treatment business for two years post-termination.  LDA § 17.2(a).  Importantly, however, no reciprocal obligation appears in the operative agreements (at least that Plaintiff has pointed to).

*Second*, SG USA says that Defendants misappropriated its trade secrets by using SG USA's "confidential and proprietary" information, such as client lists and contact information, to solicit SG USA's clients.  Pl. Br. ¶ 35; Compl. ¶¶ 122-123.

SG USA goes on to allege, *third,* that Defendants engaged in unfair competition, Pl. Br. ¶ 38, and *fourth*, breach of fiduciary duty.  *Id*. ¶¶ 40-41.

*Fifth*, SG USA contends that Defendants defamed it (i) by issuing a press release in March 2021 that described the termination of the parties' relationship; and (ii) through various statements by Mr. Heath, including that SG USA was no longer in operation and that it was not permitted to distribute "Silent Gliss" products aside from its existing inventory.  Bibi Aff. ¶¶ 37-40.  The complaint lays out other causes of action, as well, but SG USA does not appear to be marshaling those in support of the instant motion.  *See* Pl. Br. ¶¶ 11-46.

SG USA seeks an injunction that is both prohibitive and mandatory.  It would *prohibit* Defendants from doing the following:

(1)   using the "Plaintiffs' [sic] confidential, personal and proprietary business documents and information";

(2)   competing with Plaintiff in a manner that "interferes with their [sic] rightful Sell-Off Period" or "engaging in any business with customers or vendors which whom the Plaintiff did business with, intended to business with, or had record of, while in a contractual relationship with the Plaintiff";

(3)   "directly or indirectly using any knowledge gained while under a contractual relationship with the Plaintiff to solicit, divert or accept business from any customers or vendors of the Plaintiff";

(4)   making any "disparaging or defamatory statements regarding Plaintiff"; and

(5)   destroying computer files or documents belonging to Plaintiff or that "relate to" Defendants' communications with Plaintiff's customers or vendors.

Pl.'s Mot. for Prelim. Inj. ¶ 1(a)-(g), ECF No. 14.  Plaintiff also asks the Court to *compel* Defendants to:

(1)   turn over any of Plaintiff's property that is in the defendants' possession or control;

(2)   issue a press release notifying defendants' "existing customer base that the Plaintiff is within [its] right to conduct new business, involving the sale of any and all remaining Silent Gliss Systems and Products in the possession of the Plaintiffs, as part of their

7

inventory, during the Sell-Off Period";

(3)   "honor any and all warranties for their damaged
       goods that are in need or repair, but do so in a
       way that does not have the effect of stealing and
       usurping our proprietary customer information";
       and

(4)   "reinstate the listing of SGUSA on their company
       website as the official US based supplier during
       the Sell-Off Period."

*Id.* ¶¶ 2-6.

Defendants respond that Plaintiff is not entitled to
the injunctive relief sought; that the Court lacks jurisdiction
to order injunctive relief against the defendants who have not
been served; and that the case should be referred to arbitration
pursuant to Section 21.11 of the LDA and Section 6.8 of the SG
Corp. Agreement.  *See* Def. Opp. 18-19.

For the reasons set forth below, I conclude that the
applicable arbitration provisions authorize Plaintiff to seek
injunctive relief here, but that Plaintiff has not satisfied the
requirements for injunctive relief.

## II.  Discussion

## A.   Arbitration Versus Court Injunction

Both the LDA and SG Corp. Agreement contain
arbitration clauses, at Section 21.11 and Section 6.8,
respectively.  Those sections provide that "any dispute" arising
out of or relating to the agreements will be referred to
arbitration, but go on to say that:

> Notwithstanding the foregoing, either party shall be
> entitled to seek temporary or permanent injunctive
> relief in the event of any breach of this Agreement by
> the other party in any court of competent jurisdiction
> pursuant to Section 17.3 hereof.

LDA § 21.11; SG Corp. Agreement § 6.8.  The interpretive
challenge presented by these provisions is that neither
agreement contains a Section 17.3.  Defendants contend that the
"parties intentionally omitted" that section, and in doing so
manifested their intent to require that all matters under the
agreements should be arbitrated.  Def. Opp. 18.  Defendants
submit no extrinsic evidence in support of this contention, and
it does not make logical sense: if the parties chose to omit
Section 17.3 because they wanted to arbitrate any request for
injunctive relief, then presumably they would also have chosen
to omit the above-quoted language in Section 21.11 of the LDA
and Section 6.8 of the SG Corp. Agreement.  *See, e.g.*, *Int'l
Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 86 (2d
Cir. 2002) ("We disfavor contract interpretations that render
provisions of a contract superfluous.") (applying New York law);
*Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("Under New York
law an interpretation of a contract that has the effect of
rendering at least one clause superfluous or meaningless is not
preferred and will be avoided if possible.").[3]  Here, the

_____

provisions authorizing either party to seek injunctive relief in court are clear and direct, apart from the reference to Section 17.3, and as such they should not be ignored (*i.e.*, rendered superfluous) lightly.

Article 17 of the LDA — where Section 17.3 would appear, if it existed — deals with Confidentiality and Non-Competition.  It is not immediately obvious how the parties would seek injunctive relief "pursuant to" a provision dealing with those subjects.  One natural surmise is that the missing paragraph would have directed the parties to seek a protective order in connection with any application in federal court — that would explain Section 17.3's location in an Article relating to "Confidentiality."  Regardless of what Section 17.3 would have required, however, its absence does not undermine the force of the arbitration clauses' carve-out with sufficient force for me to strike the carve-out entirely.  Given the parties' agreement that "either party shall be entitled to seek . . . injunctive relief in the event of any breach" of the agreements, I proceed to consider the motion for injunctive relief on its merits.

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, and internal quotation marks.

**B.    Preliminary Injunction**

A preliminary injunction is an "extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  Such injunctions are "never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). Generally speaking, a preliminary injunction may be granted only when the moving party demonstrates (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the party's favor, and (4) that an injunction is in the public interest.  *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).  The preliminary injunction sought here is (in part) a so-called "mandatory injunction" because it would "alter[] the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011).  Mandatory injunctions require an even higher showing on the merits: "a clear showing that the moving party is entitled to the relief requested, or [that] extreme or very serious damage will result from a denial of preliminary relief." *Id.*

For the following reasons, Plaintiff fails to show likelihood of success or irreparable harm.

1.   <u>Likelihood of Success on the Merits</u>

a.   Breach of Contract

Plaintiff has failed to demonstrate a likelihood of success on the merits of its breach-of-contract claims.  I take Plaintiff's various contract theories in turn.

*Breach of Restrictive Covenants*.  Plaintiff's breach-of-contract claim is predicated in part on what Plaintiff alleges are restrictive covenants — non-competition and non-solicitation obligations — running in its favor.  Pl. Br. ¶ 12. This claim is unlikely to succeed for the straightforward reason that Plaintiff has not shown that any such obligations exist. The LDA contains non-competition and non-solicitation provisions *restricting SG USA's* activities, but those provisions do not apply to SG International or any other group company.  *See* LDA § 17.2(a).[4]  To the extent Plaintiff is invoking the "exclusive license" in Section 1.1 of the LDA in support of its argument that defendants are prohibited from competition or solicitation, Plaintiff has not explained why that provision survives termination.  *See Cambridge Cap. LLC v. Ruby Has LLC*, No. 20-CV-

---

[4] Plaintiff's *complaint* also alleges that all Defendants breached the implied covenant of good faith and fair dealing.  Compl. ¶¶ 131-134 (Second Cause of Action).  This allegation is not repeated in the motion for injunctive relief or accompanying memorandum of law, ECF Nos. 14, 15. Regardless, the covenant "cannot be construed so broadly" as to "effectively . . . nullify other express terms of a contract, or to create independent contractual rights."  *Fesseha v. TD Waterhouse Inv. Servs.*, 761 N.Y.S. 2d 22 (App. Div. 2003).

11118, 2021 WL 4481183, at *31 (S.D.N.Y. Sept. 30, 2021)
(obligations under a contract terminated when the contract did,
because "[t]hat is the meaning of the termination of a
contract"); *see also NuCurrent Inc. v. Samsung Elecs. Co.*, No.
19-CV-798, 2019 WL 2776950, at *2 (S.D.N.Y. July 2, 2019) (forum
selection clause did not survive termination where it was "not
specifically identified as one of the provisions that survives
expiration or termination" of the agreement).[5]

> Notably, Section 15.4 of the LDA expressly provides
that SG USA may continue to license SG International's
intellectual property during the Sell-Off Period, but it does
not — unlike Section 1.1 — provide explicitly for exclusivity.
The two licenses are labeled differently: the "exclusive"
"License" in Section 1.1 is a defined term, identified with a
capital L; the extended license in effect during the Sell-Off
Period is rendered in lowercase.  Moreover, given that the
license-continuation provision in Section 15.4 is not at all
time-limited — the Sell-Off Period lasts until SG USA has sold
off its remaining inventory "in the ordinary course of business"
— it would be a stretch to read such exclusivity into Section

---

[5] Both the LDA and the SG Corp. Agreement provide that they shall be
governed by New York law, *see* LDA § 21.11; SG Corp. Agreement § 7.7, and the
parties agree that New York law applies.

15.4.  In the end, Plaintiff has not established a likelihood of success on this aspect of its breach of contract claim.

       *Breach of Confidentiality*.  The LDA's confidentiality provision, like its non-competition provision, runs in favor of SG International; it covers *SG USA's* obligation to keep information confidential, but not the other way around.  LDA § 17.  The SG Corp. Agreement does contain a provision requiring *both* parties to keep certain information confidential – namely, manufacturing and trade secrets, and non-public information covered by the agreement, including patents, designs, models, and sales channels.  SG Corp. Agreement § 4.1.  However, though SG USA alludes to a breach of the confidentiality provisions in both agreements, it does not allege the nature of the breach with much specificity.  *See, e.g.*, Pl. Br. ¶ 16 ("Mr. Heath was required to keep confidential all manufacturing and trade secrets, non-public information about the Patents, designs, models, sales channels and other information or know-how under the SG Corp. Agreement."); *id.* ¶ 12 ("Plaintiff has demonstrated a likelihood of success on the merits with respect to its breach of contract claim because it has made the requisite showing that the confidentiality and restrictive covenants to which Mr. Heath and SG Corp. are bound, are enforceable, and Mr. Heath has breached those covenants.").

14

Plaintiff does say that it has "concrete evidence" that Mr. Heath has continued to solicit its clients "through the present, and even just a few weeks prior to the filing of this motion" for injunctive relief. *Id.* ¶ 23. In an affidavit, SG USA's treasurer says SG USA has identified "in excess of 100 Clients, Customers and Vendors" "illegally stolen" by Mr. Heath from Plaintiff's computer systems. Bibi Aff. ¶ 43. But SG USA's memorandum of law does not specify who these clients were, or how Mr. Heath allegedly misused SG USA's confidential information to solicit them. Such conclusory allegations, made without evidentiary support, are not a sufficient basis for injunctive relief. *See, e.g.*, *Clark v. Childs*, 416 F. Supp. 3d 221, 224 (E.D.N.Y. 2017) ("Even if the Court were to credit Plaintiff's unsupported contentions, they are nevertheless insufficient to support the grant of injunctive relief.").

Moreover, Heath has proffered an innocent explanation for the evidence that SG USA does point to, and SG USA has not adequately rebutted that explanation at this stage. SG USA says Heath exfiltrated this confidential information by forwarding emails from his SG USA email account to his Silent Gliss Global Ltd. ("SGGL") email account while he was working with both companies, or by cc'ing himself at one address on emails he sent from the other. Heath Decl. ¶¶ 30, 43. Heath responds that he was working for both companies at the time, and wanted

15

"important" emails to reside in both accounts so that he did not lose track of their substance. *Id.* ¶ 5.  Heath further avers that he did so "with the full knowledge and express approval of Plaintiff, and nobody from Plaintiff ever complained about this." *Id.*  SG USA does not meaningfully contest this entirely plausible explanation.  Given SG USA's failure to point to any specific misuse of client information, this explanation has not been discredited at this stage.

        b.   Breach of Fiduciary Duty

      SG USA cannot show that its claim for breach of fiduciary duty is likely to succeed on the merits because it fails to establish that fiduciary relationship existed.  "New York law requires that a fiduciary relationship exhibit the characteristics of de facto control and dominance, . . . [which] means that a fiduciary relationship exists only when a person reposes a high level of confidence and reliance in another, who thereby exercises control and dominance over him." *Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539, 554 (E.D.N.Y. 2015) (citing *Doe v. Roman Catholic Diocese of Rochester*, 907 N.E.2d 683, 683 (N.Y. 2009); then citing *People ex rel. Cuomo v. Coventry First LLC*, 915 N.E.2d 616, 620 (N.Y. 2009)).  "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."

*Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356, 372
(S.D.N.Y. 2011), *aff'd*, 484 F. App'x 616 (2d Cir. 2012) (quoting
*EBC I, Inc. v. Goldman Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y.
2005)).

Here, there is no indication that Defendants had a
fiduciary duty to SG USA.  SG USA's claim appears to rely on the
same confidentiality and non-compete provisions discussed above.
*See* Pl. Br. ¶ 41 (alleging Defendants breached a fiduciary duty
by using SG USA's "confidential and proprietary information . .
. just to compete with Plaintiff and solicit its customer and
vendors").  Though a fiduciary relationship "may be created by
contract," it must be more than a "conventional business
relationship."  *Intellivision*, 784 F. Supp. 2d at 372.  The
contracts evince no more than that here; indeed, both contracts
state that "[n]othing contained in this Agreement shall make
either party a partner, agent, employee or joint venture of the
other.  The relationship of the parties shall be that of
independent contractors."  SG Corp § 6.7; LDA § 21.10.  *See
Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 274 (S.D.N.Y.
2006) ("[F]iduciary relationships typically do not arise between
parties engaging in arms length business transactions,
especially those where the parties are each represented by
counsel or other professional advisors.").  SG USA relies solely
on cases involving an *employee's* duty of loyalty to its

17

employer, *see* Pl. Br. ¶ 40, but Heath was never employed by SG USA.  *See generally* Heath Decl.

      b.   Misappropriation of Trade Secrets

SG USA has likewise failed to establish a likelihood of success on its theft-of-trade-secrets claim.  First, SG USA does not even attempt to satisfy a key factor in establishing that information is, in fact, a trade secret: that the information was kept secret.  "Although New York courts have identified a number of factors that courts may look to in determining whether information constitutes a trade secret, the most important consideration is whether the information was kept secret."  *Geritrex Corp. v. Dermarite Indus*., LLC, 910 F. Supp. 955, 961 (S.D.N.Y. 1996); *see also Lehman v. Dow Jones & Co.*, 783 F.2d 285, 298 (2d Cir. 1986) ("[T]he most important consideration remains whether the information was secret."); *Pauwels v. Deloitte LLP*, No. 19-CV-2313, 2020 WL 818742, at *6 (S.D.N.Y. Feb. 19, 2020) ("Plaintiff's failure to allege 'substantial measures' – if any measures at all – taken to protect the spreadsheets . . . does preclude this claim's success.").

SG USA has not "show[n] that it took substantial measures to protect the secret nature of its information." *Geritrex Corp.*, 910 F. Supp. at 961; *cf. New York Packaging II LLC v. Mustang Mktg. Grp. LLC*, No. 21-CV-1629, 2022 WL 604136,

at *5 (E.D.N.Y. Mar. 1, 2022) (Plaintiff took reasonable steps
to protect trade secrets where it "restricted access to its
alleged trade secrets to personnel on a need-to-know basis and
required employees and independent contractors to sign
confidential agreements and other contracts"); *Universal
Processing LLC v. Zhuang*, No. 17-CV-10210, 2018 WL 4684115, at
*3 (S.D.N.Y. Sept. 28, 2018) (plaintiff's "reasonable steps to
protect the secrecy of its trade secret information . . .
includes, but is not limited to, [the] use of passwords,
security timeouts and confidentiality policies and non-
disclosure covenants in employment agreements").

        This alone is fatal SG USA's showing of likelihood of
success, but there are other shortcomings in its showing to
date.  For example, SG USA alleges that Defendants stole
"customer lists," but the few examples it provides are
individual emails containing some client or contact information
– not the "compilation of information" generally required for a
client list to constitute a trade secret.  *See Ashland Mgmt.
Inc. v. Janien*, 624 N.E.2d 1007 (N.Y. 1993) (Though "[t]here is
no generally accepted definition of a trade secret," New York
courts use the Restatement's definition: "any formula, pattern,
device or compilation of information which is used in one's
business, and which gives him an opportunity to obtain an
advantage over competitors who do not know or use it."); *e.g.*,

*E. Bus. Sys., Inc. v. Specialty Bus. Sols.*, LLC, 739 N.Y.S.2d 177 (App. Div. 2002) (customer lists and client files were "trade secrets" where they contained "information . . . compiled through considerable effort by [plaintiff] and its employees over several years and was not available to the public"). SG USA does not point to any such compilation, but rather invokes four individual emails – only one of which contains some names of companies Heath should meet with – that Heath allegedly forwarded to his other email address over the years. *See* Exs. to Bibi Aff., ECF Nos. 14-13, 14-14.

Moreover, as discussed above, SG USA fails to sufficiently show that Defendants actually *stole* its confidential information. *See supra* Section II.B.1(a). Heath provides an innocent explanation in response to the allegation that he illicitly transferred SG USA's emails to his SGGL email – namely, that while he had email addresses with both companies, he primarily used his SGGL email account and copied that account on his SG USA emails in order to keep track of them. Heath Decl. ¶¶ 5-7. SG USA does not meaningfully attempt to rebut this innocent explanation, and thus fails to show likelihood of success on its claim that Defendants misappropriated information.

20

c.   Unfair Competition

SG USA fails to show likelihood of success on its unfair competition claim for the same reason as its misappropriation claim.  "Where an unfair competition claim duplicates a claim for misappropriation of trade secrets, the two claims generally rise or fall together." *Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851, 2006 WL 2524187, at *29 (E.D.N.Y. Aug. 30, 2006); *see, e.g.*, *Remede Consulting Grp. Inc. v. Hamer*, 2021 WL 430898, at *6 (E.D.N.Y. 2021) (because plaintiff's claim for "unfair competition is premised entirely on [defendant's] unauthorized use of trade secrets, . . . it must fall along with its trade secrets claim").  Here, SG USA argues that the same acts support both claims.  Pl. Br. ¶¶ 38-39 (arguing that it has shown likelihood of success on its unfair competition claim for the same reasons as its misappropriation-of-trade-secrets claim).  Indeed, the complaint alleges that "Defendants have engaged in the bad faith misappropriation of a commercial advantage belonging to SG USA by exploiting proprietary information and trade secrets in order to gain a competitive advantage over SG USA in its exclusive territory."  Compl. ¶ 157.

d.   Defamation

Finally, SG USA has not shown that its defamation claim is likely succeed.  The core element of a defamation claim

21

is the making of a false statement.  *See, e.g.*, *NYC Med. Prac., P.C. v. Shokrian*, No. 19-CV-162, 2019 WL 1950001, at *2 (E.D.N.Y. 2019) ("To state a claim for defamation under New York law, the plaintiff must allege . . . a false statement about the plaintiff.").  "Truth is an absolute bar to a defamation claim." *Id.*  Plaintiff's defamation claim rests on a press release issued by SG International and Heath's statements to certain customers, but SG USA fails to adequately allege the falsity of these statements.  The March 2021 press release accurately stated that SG USA no longer represented SG International and was not entitled to sell Silent Gliss products *aside from* its remaining inventory.  Ex. I to Decl. of Bernard Bratschi, ECF No. 17-9 (press release states that the Bibi family – SG USA's owners – "have no right to sell Silent Gliss products *except for the clearance sale of the rest of their inventory*"); *see also id.* (stating that SG USA is "no longer representing us and will not be able to supply Silent Gliss products (*except what is left in their stock*)") (emphases added).  These statements are consistent with the parties' agreement.  *See* LDA §§ 15.2-15.4.

2.   <u>Irreparable Harm</u>

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).  It requires an "injury that is neither remote nor speculative, but actual and imminent."  *N.Y. ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015).  Thus, "[a] district court should generally consider delay in assessing irreparable harm."  *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 39 (2d Cir. 1995).  And "[w]here there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances."  *Faiveley*, 559 F.3d at 118.  SG USA fails to show irreparable harm for both reasons – it delayed seeking it, and money damages would be adequate.

First, SG USA's delay in seeking injunctive relief cuts against finding irreparable harm.  "While delay does not always undermine an alleged need for preliminary relief, months-long delays in seeking preliminary injunctions have repeatedly been held by courts in the Second Circuit to undercut the sense of urgency accompanying a motion for preliminary relief." *Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 439 (E.D.N.Y. 2013); *see e.g., Levola v. Fischer*, 403 F. App'x 564, 565 (2d Cir. 2010) (affirming district court's finding that

plaintiff failed to show immediate danger of irreparable harm
because of his delay in seeking preliminary relief); *Majorica,
S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir. 1985)
(reversing grant of preliminary injunction where plaintiff was
aware of conduct complained of for several years but did not
seek injunctive relief until seven months after filing suit).

SG USA filed this lawsuit in December 2021 – over
three years after the Corp. Agreement terminated; around three
years after Plaintiff "discovered" that defendants "illegally
retained or absconded the Plaintiff's consumer and vendor
contact list, as well as other confidential, proprietary and
personally identifiable information" and tried to steal
Plaintiff's clients and defame it, *see* Pl. Br. ¶ 3; and eighteen
months after the LDA terminated and Defendants allegedly began
violating their contractual obligations under the LDA's
termination provisions.  Then, after filing the lawsuit, SG USA
waited over four months to move for a preliminary injunction.
This constitutes unreasonable delay.  *See, e.g.*, *Citibank, N.A.
v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (delay of suit
for nine months negated presumption of irreparable harm);
*Landers v. Samuelson*, No. 12-CV-703, 2012 WL 825117, at *2
(E.D.N.Y. Mar. 8, 2012) ("delay of four months negate[d] the
alleged urgency of Plaintiff's request"); *Union Cosmetic Castle,
Inc. v. Amorepacific Cosmetics, Inc.*, 454 F. Supp. 2d 62, 68-69

(E.D.N.Y. 2006) (no irreparable harm where plaintiff waited five months to seek injunctive relief after learning of the facts that gave rise to his lawsuit).

SG USA also fails to allege an actual or imminent injury that money cannot redress.  "A party's loss of reputation, good will, and business opportunities resulting from a breach of contract may constitute irreparable harm, where, for example, a party is threatened with loss of a business, a relatively unique product, or the ability to provide its product or service to the market or its customers."  *See Fox Ins. Co. v. Envision Pharm. Holdings, Inc*., No. 9-CV-237, 2009 WL 790312, at *7 (E.D.N.Y. Mar. 23, 2009).  However, there is no irreparable harm where the "alleged loss of goodwill was doubtful, and lost profits stemming from the inability to sell the terminated product could be compensated with money damages determined on the basis of past sales of that product and of current and expected future market conditions."  *Tom Doherty Assocs.*, 60 F.3d at 38.

SG USA broadly alleges irreparable harm to its reputation and goodwill, but it does not support its claims with concrete evidence.  *Fox Ins. Co.*, 2009 WL 790312, at *7 (holding that "speculative and conclusory allegations [of loss of reputation and goodwill] are insufficient to establish irreparable harm").  SG USA points to a few clients it says it

25

risks losing, but it fails to allege resulting losses that could not likely be quantified and redressed with monetary damages. *Cf. Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 445 (2d Cir. 1977) (affirming finding of irreparable harm because plaintiff "presented ample evidence to show a threatened loss of good will and customers, both present and potential, neither of which could be rectified by monetary damages"). Moreover, it is unclear that SG USA would even be entitled to the goodwill it claims it risks losing, as the LDA specifically states that "[a]ll goodwill derived from the use by SGUSA of the Trademarks, Patents and other proprietary rights of SGI *shall inure to the benefit of SGI*." LDA § 5.7 (emphasis added).

## III. Conclusion

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is DENIED. The parties shall proceed to briefing on Defendants' motion to compel arbitration. The motion shall be briefed as follows: Defendants' motion papers by June 13, 2022; Plaintiff's response by July 13, 2022; and Defendants' reply, if any, by July 27, 2022. The Clerk of Court is also directed to amend the caption of this action by

replacing "Silent Gliss Holding Company" with "Silent Gliss

Holding Ltd."


     SO ORDERED.


                                    /s/ Eric Komitee

                                ERIC KOMITEE

                                United States District Judge


Dated:    May 13, 2022
            Brooklyn, New York