```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 SILENT GLISS INC.,

                     Plaintiff,              MEMORANDUM & ORDER
                                              22-CV-522 (EK)(MMH)

         -against-

 SILENT GLISS INTERNATIONAL LTD.,
 SILENT GLISS HOLDING LTD., SILENT
 GLISS LIMITED, et al.,

                     Defendants.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

This case arises out of a contract dispute between Silent Gliss International Ltd. ("SG International" or "SGI"), a Swiss manufacturer of window treatments, and its (previously) authorized United States distributor, Silent Gliss Inc. ("SG USA"). In short, SG USA alleges that after its relationship with SG International broke down, SG International interfered with SG USA's efforts to sell its remaining inventory, in violation of the parties' contractual arrangements. SG USA filed suit in New York state court, prompting defendants SG International, Silent Gliss Corp., and Michael Heath to remove to this Court. *See* Notice of Removal, ECF No. 1.

The defendants now move for an order compelling arbitration and dismissing the action pursuant to the Federal

Arbitration Act, 9 U.S.C. § 1, and Federal Rule of Civil Procedure 12(b)(1), 12(b)(3), or 12(b)(6). The defendants' request for arbitration is granted. Their request for outright dismissal of this case, however, is denied; these proceedings will be stayed pending the completion of arbitration.

## I.   Background

**A.   Factual Background**

The factual background of this case is set forth in my order denying SG USA's motion for a preliminary injunction. *See* Order dated May 13, 2022, ECF No. 25. This order will recite only certain facts relating to the effort to compel arbitration.

In 2014, SG International entered a "License and Distribution Agreement" with SG USA pursuant to which SG USA received the exclusive right to market and distribute SG International's products in the United States. License & Distribution Agreement ("LDA") § 1.1, Ex. to Aff. of Ezra Bibi, ECF No. 14-6. SG International never owned SG USA in whole or in part, and they were not part of a common corporate structure. *See* Rule 7.1 Statement, ECF No. 5. Instead, the relationship between the two has been purely contractual. *See* LDA at 1-2.

Section 21.11 of the LDA governs dispute resolution. It provides:

> Any dispute, controversy or claim, arising out of or relating to this Agreement or the relationship created thereby, including the formation, interpretation, breach or

2

termination thereof, and whether the claims asserted are arbitrable, will be referred to and finally determined by arbitration in accordance with the JAMS International Arbitration Rules.[1]

*Id.* Section 21.11 goes on to stipulate that any arbitration proceedings will occur in New York City before a single arbitrator. *Id.* Following arbitration, "[j]udgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof." *Id.*

**B. The Defendants' Motion to Compel Arbitration**

SG USA's complaint asserted thirteen causes of action including various contract and tort claims. *See* Compl. ¶¶ 126-200, ECF No. 1-1.[2] The defendants argue that SG USA violated the LDA's arbitration clause by commencing this suit. *See* Defs.' Mem. in Support of Mot. to Compel Arbitration ("Def. Br.") 1-2, ECF No. 28-1. The defendants contend that "all" claims against them "arise out of or relate to" the LDA and thus must be arbitrated under Section 21.11. *Id.* at 2, 5. Further, they submit that any doubts as to arbitrability must be determined by

---

[1] "JAMS" is the acronym for Judicial Arbitration and Mediation Services, a global provider of alternative dispute resolution services. *See* About Us, JAMS, https://www.jamsadr.com/about/.

[2] The thirteen causes of action are as follows: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) promissory estoppel, (4) unjust enrichment, (5) fraud and deceit, (6) constructive fraud, (7) unfair compensation, (8) fraudulent inducement, (9) negligent misrepresentation, (10) bad faith, (11) frustration of purpose, (12) tortious interference with business relations, and (13) economic duress.

3

the arbitrator, given the parties' "clear and unmistakable intent" "to delegate issues of arbitrability to the arbitrator." *Id.* at 13.

In response, SG USA contends that the LDA is "permeated with fraud and deceit" and is therefore "void," causing the arbitration clause to "fall with the rest of the contract." Pl.'s Mem. in Opp. to Mot. to Compel Arbitration ¶¶ 17, 45, 47 ("Pl. Br."), ECF No. 29. In the alternative, SG USA contends that even if the LDA and its arbitration clause are enforceable, the arbitration clause is still narrow in scope, and only four of SG USA's claims should be arbitrated thereunder: its first (breach of contract), second (breach of implied covenant of good faith and fair dealing), fourth (unjust enrichment), and eleventh (frustration of purpose). *Id.* ¶ 35. SG USA argues that the arbitration clause does not reach its other nine claims — "business related torts" and other "wrongful acts that [are] outside" the scope of the LDA. *Id.* ¶ 12; *see also id.* ¶ 42.

For the reasons set forth below, I conclude that arbitration is the proper forum for resolving (i) the merits of SG USA's concededly arbitrable claims (the first, second, fourth, and eleventh causes of action), and also (ii) the arbitrability of SG USA's other claims (as to which arbitrability is disputed).

4

## II. Legal Standard

Under the Federal Arbitration Act, parties can petition a federal district court for an order directing that "arbitration proceed in the manner provided for in [an arbitration] agreement." 9 U.S.C. § 4. Although this statutory scheme enshrines a "national policy favoring arbitration, a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163, 175 (2d Cir. 2022).[3] If the court concludes that arbitration is required, the court must stay the public proceedings and compel arbitration. *See WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997).

When deciding whether a dispute is arbitrable, courts first consider whether the parties agreed to arbitrate. *ExxonMobil*, 44 F.4th at 175. Because any such agreement is a contractual matter, "the threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Id.* If the court concludes that the parties agreed to arbitrate, the court then must determine whether that agreement encompasses the claims at issue. *Id.*

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits citations and internal quotation marks.

Questions of arbitrability are "for judicial determination unless the parties clearly and unmistakably provide otherwise" — *i.e.*, that questions of arbitrability should be decided by a designated arbitrator. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

### III. Discussion

**A.    Agreement to Arbitrate**

The arbitration clause in Section 21.11 of the LDA is broad; it calls for the parties to arbitrate all disputes "arising out of or relating to" the LDA or the "relationship created thereby." The Second Circuit has held a lesser-included version of this clause — dictating that "[a]ny claim or controversy arising out of or relating to this agreement shall be settled by arbitration" — to be broad. *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001). Here, Section 21.11 expressly covers not only disputes relating to the interpretation of the contract, but also disputes emanating from the contract's "formation" and "termination." LDA § 21.11. This is a "classic" example of a broad clause. *Cheng v. HSBC Bank USA, N.A.*, 467 F. Supp. 3d 46, 51 (E.D.N.Y. 2020) (collecting cases). Indeed, the LDA's arbitration clause goes further than some broad arbitration

clauses, mandating arbitration of any dispute arising out of the "relationship" created by the agreement.

SG USA argues that the arbitration clause is invalid because the entire agreement is void. Pl. Br. ¶¶ 13-17. But the asserted basis for this argument — that SG USA was induced to enter the LDA by fraud — would (if successful) dictate that the LDA is *voidable*, not void. *ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 29-30 (2d Cir. 2002). The void-versus-voidable distinction matters because a challenge that goes to the validity of the entire contract — rather than to the arbitration clause in particular — can prevent arbitration only if the contract is held to be void. *Id.* at 29 (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 32 (2d Cir. 2001)); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").

Where, as here, the challenger asserts fraud in the inducement — a voidability issue — it can prevent arbitration only by demonstrating that it was fraudulently induced to agree to the *arbitration clause itself*. *ACE Cap.*, 307 F.3d at 29 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)). Here, SG USA has failed to allege, let alone substantiate, that it was fraudulently induced to agree to

7

the LDA's arbitration clause specifically. Accordingly, SG USA's claim of fraud in the inducement cannot preclude arbitration.

B.  **Proper Forum for Questions of Arbitrability**

I turn next to the issue of whether the arbitration clause covers all thirteen claims asserted in this case. SG USA contends, as an alternative to its fraud claim, that the arbitration clause is of limited reach. Pl. Br. ¶ 35. SG USA does concede that if the arbitration clause is to be enforced, that provision should reach four of its claims (the first, second, fourth, and eleventh). *Id.* But the remaining nine claims, SG USA contends, are "extra-contractual" and thus beyond the scope of the arbitration clause. *Id.* at 14.

This question, too, must be resolved by the arbitrator. While "there is a general presumption that the issue of arbitrability should be resolved by the courts," that presumption falls when there is "*clear and unmistakable evidence* from the arbitration agreement" that the parties intended the arbitrator to decide questions of arbitrability. *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005). "Parties to an arbitration agreement may provide that the arbitrator, not the court, shall determine whether an issue is arbitrable." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002). "When the parties' contract delegates the arbitrability question to an

8

arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). "In those circumstances, a court possesses no power to decide the arbitrability issue." *Id.*

Here, the plain text of Section 21.11 clearly grants the arbitrator the power to decide questions of arbitrability. Under New York law, "[c]lear and unmistakable evidence exists when," for example, "an arbitration clause explicitly delegates arbitrability determinations to the arbitrator." *Arshad v. Transportation Sys., Inc.*, 183 F. Supp. 3d 442, 446 (S.D.N.Y. 2016). The LDA's arbitration clause provides: "Any dispute, controversy or claim, arising out of or relating to this Agreement or the relationship created thereby, including the formation, interpretation, breach or termination thereof, and *whether the claims asserted are arbitrable*, will be referred to and finally determined by arbitration in accordance with the JAMS International Arbitration Rules."  LDA § 21.11 (emphasis added).  This language constitutes clear and unmistakable evidence of the parties' intent to arbitrate questions of arbitrability.  *See, e.g.*, *KPA Promotion & Awards, Inc. v. JPMorgan Chase & Co.*, No. 20-CV-3910, 2021 WL 1317163, at *5 (S.D.N.Y. Apr. 8, 2021) (holding that contract language providing for arbitration of any claim "regarding the applicability of this arbitration clause" clearly and

9

unmistakably delegated questions of arbitrability to the arbitrator).

In addition to this express delegation, the LDA also delegates questions of arbitrability by incorporation.  The Second Circuit has "held that when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."  *Contec*, 398 F.3d at 208; *see also DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318 (2d Cir. 2021) (collecting cases).  Here, the LDA's arbitration clause stipulates that the JAMS International Arbitration Rules will govern the arbitration.  LDA § 21.11.  And Article 4.4 of those Rules states that "[t]he Tribunal will have jurisdiction to determine whether any claim, defense or counterclaim, whether original or amended, falls within the scope of the arbitration clause or the parties' separate agreement to arbitrate."  JAMS Article 4.4.

For these reasons, it is clear that the parties agreed to arbitrate questions of arbitrability.

C.  **Waiver of the Right to Arbitrate**

SG USA next contends that the defendants have waived their right to pursue arbitration.  A court "consider[s] three

factors in determining whether a party has waived its right to arbitration: (1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *Louis Dreyfus*, 252 F.3d at 229.  The first factor weighs strongly against waiver here.  The defendants timely removed this case from state court.  *See* ECF No. 1.  Within a week of that removal, they requested a pre-motion conference on a proposed motion to compel arbitration.  *See* Defs.' Mot. for Pre-Mot. Conference, ECF No. 7.  Roughly six weeks passed between the filing of the complaint and the defendants' first step toward compelling arbitration.  This short period does not support a waiver.  *See PPG Indus., Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 108 (2d Cir. 1997) (five-month delay alone does not support waiver of arbitration).

Nor has there been extensive litigation.  The case to date has been primarily concerned with SG USA's motion for a preliminary injunction, which was filed two months *after* the defendants first declared their intention to compel arbitration.  *See* Pl.'s Notice of Mot. for Prelim. Inj., ECF No. 14.  The defendants have not engaged in "substantial motion practice or discovery," and the Second Circuit typically has refused to find waiver in such cases.  *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002).

11

Finally, SG USA has not established prejudice. The Second Circuit has explained that prejudice "refers to the inherent unfairness – in terms of delay, expense, or damage to a party's legal position – that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Louis Dreyfus*, 252 F.3d at 229-30. This factor thus overlaps with the first two waiver factors. As discussed, those factors do not support a finding of waiver.

Given the absence of undue delay or protracted litigation, there is no basis to conclude that SG USA suffered harm to its legal position or incurred unnecessary expenses due to the defendants' conduct. SG USA levels the conclusory allegation that it would be "highly prejudiced" by an order to arbitrate its claims. Pl. Br. ¶ 59. But "[p]rejudice does not refer to enforcing a bargained-for agreement." *Louis Dreyfus*, 252 F.3d at 230.

**D.   Non-Signatories' Right to Arbitrate**

SG USA also argues that it has no obligation to arbitrate its claims against the defendants who are non-signatories to the LDA – namely, SG Corp. and Michael Heath. An agreement "to arbitrate issues of arbitrability with another party" does not necessarily require the signatory to arbitrate

12

with non-signatories. *Contec*, 398 F.3d at 209. It is for a court to "decide whether arbitration of arbitrability is appropriate" as to non-signatories. *Id.*

"Under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute" if two conditions are met. *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 358 (2d Cir. 2008). First, "the issues the nonsignatory is seeking to resolve in arbitration" must be "intertwined with the agreement that the estopped party has signed." *Doe v. Trump Corp.*, 6 F.4th 400, 412 (2d Cir. 2021). Second, "the relationship between the parties must either support the conclusion that the signatory effectively consented to extend its agreement to arbitrate to the non-signatory, or, otherwise put, made it inequitable for the signatory to refuse to arbitrate on the ground that it had made no agreement with the non-signatory." *Id.* at 413.

The *Sokol* test is met here. First, as discussed above, each claim is either concededly arbitrable or must be submitted to arbitration per the express terms of the LDA. The same claims against the non-signatories are thus clearly "intertwined with" the LDA. Second, the non-signatory defendants are related to or agents of SG International:

13

SG Corp. is an affiliate of SG International, and Michael Heath is the former President of SG Corp. *See* Def. Br. 15-16.[4] And there is no dispute that SG USA's allegations as to Mr. Heath relate to his role as an agent of SG Corp. or SG International. The Second Circuit "has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities." *Trump Corp.*, 6 F.4th at 413. Because SG Corp. is an affiliate of SG International and Michael Heath was an agent of SG Corp. or SG International at all times relevant to this case, they may compel SG USA to arbitrate the claims against them.

Further, SG USA treats the defendants in this case collectively by referring to every corporate and individual defendant together as "Defendants" in the complaint. *See, e.g.*, Compl. ¶ 3 (referring to the LDA "which Plaintiff and Defendants entered into"). The Second Circuit has recognized that when a plaintiff treats multiple defendants "as a single unit in its complaint," it "cannot [later] shield itself from arbitration" by arguing that the non-signatories do not have the right to enforce the arbitration clause. *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999); *see also Doctor's Assocs. Inc. v. Burr*, 226 F.

---

[4] The LDA states that "SGI and [Silent Gliss Global Ltd. ('SGGL')] are companies of the Silent Gliss Group" and notes that "SGI, SGGL and their respective Affiliates are herein referred to as 'Group Companies.'" LDA § 1.

14

Supp. 3d 106, 111 (D. Conn. 2016) ("[C]ourts in this Circuit have repeatedly held that a court will not permit plaintiffs to avoid arbitration simply by naming individual agents of the party to the arbitration clause and suing them in their individual capacity.") (collecting cases).

### IV.   Conclusion

For the foregoing reasons, the defendants' motion is granted in part.  SG USA must submit to arbitration (i) the four concededly arbitrable claims for resolution on the merits, and (ii) the nine disputed claims for resolution as to whether each of those claims is, in fact, arbitrable (and, if so, for resolution on the merits).  The defendants' request for dismissal of the case is denied.  I will retain jurisdiction and stay these proceedings pending resolution of the arbitration. *See Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 573 (2d Cir. 2005) ("[A] court which orders arbitration retains jurisdiction to determine any subsequent application involving the same agreement to arbitrate.").

The parties are directed to file a letter notifying the Court of the completion of the arbitration proceedings, or any other event that would affect the stay of this matter, within fifteen days of such occurrence.  In any event, the

15

parties shall advise the Court as to the status of the arbitration proceedings by no later than August 9, 2024.

SO ORDERED.

          /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:   February 9, 2023
        Brooklyn, New York